UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 2:19-cr-00003-DBH |
| v.                      ) | |
| ) | |
| BERHE MEKONNEN         ) | |

## GOVERNMENT'S RESPONSE
## TO DEFENDANTS' MOTION TO SUPPRESS

The United States of America, by and through its attorneys, Halsey Frank, United States Attorney for the District of Maine, and Nicholas Scott, Assistant United States Attorney, respectfully objects to defendant's motion to suppress. (ECF No. 27). For the reasons set forth below, the United States requests that the motion be denied.

## FACTS

On September 2, 2019, at approximately 11:32 p.m., Maine State Police Sergeant Thomas Pappas, sat waiting at a steady red light in his police vehicle at an intersection in South Portland, Maine. While waiting at the red light, Sergeant Pappas observed a red Dodge Avenger bearing Maine temporary license plate number 868-98, in the right lane. The vehicle proceeded through the red light, and turned right, without first coming to a complete stop. Sergeant Pappas also observed that the vehicle's license plate light was not functioning.

A dashboard surveillance camera attached to Sergeant Pappas' vehicle recorded footage prior to and after the stop.[1] The footage shows the steady red light, though it did not directly capture the vehicle travelling through the red light without stopping, due to angle of the camera and the position of the vehicle. However, the footage shows that light, from the headlights of the

---

[1] The video surveillance footage will be provided to the Court in advance of any suppression hearing, with the consent of the defendant.

approaching vehicle, appeared on the pavement to the right of Sergeant Pappas' vehicle. Further, the footage shows that the light from the vehicle's headlights continued to move, and did not stop, indicating that the vehicle did not stop at the steady right light. The footage also shows that immediately after the light from the vehicle's headlights appeared to the right of Sergeant Pappas' vehicle, Sergeant Pappas activated his turret lights and siren to initiate the stop.

The Dodge Avenger stopped and pulled to the right, after which Sergeant Pappas radioed dispatch, and approached the front passenger window of the vehicle.[2] Sergeant Pappas observed a male operator, and a male passenger, who was later identified as the defendant. Sergeant Pappas asked the operator for license, registration and insurance, and the operator replied, in substance, that he had the insurance, but he did not have his license on him. In addition, the operator stated, "my bad, I did that turn real quick, my bad, because I was lost." Upon approaching the vehicle and speaking with the operator and the defendant, Sergeant Pappas smelled the strong odor of burnt marijuana coming from the inside of the vehicle, and observed loose tobacco material and packages of Backwoods cigars inside the vehicle.[3] The operator provided a bill of sale for the vehicle, bearing the name of a female purchaser, and volunteered to Sergeant Pappas, in substance, that the vehicle belonged to a friend. Sergeant Pappas then asked the operator to write his name and date of birth on a piece of paper, and when the operator indicated he had an Ohio Driver's license and knew the number, Sergeant Pappas asked the operator to write the Ohio license number as well. In addition, Sergeant Pappas asked whether the defendant had identification, and the defendant stated that he did not.

---

[2] The time stamp from the dashboard surveillance camera footage indicates that the Dodge Avenger pulled over and stopped at approximately 11:33 p.m.
[3] Based on his training and experience, Sergeant Pappas was aware that Backwoods cigars are which are often utilized by marijuana users to form "blunts." In this process, tobacco filler is removed from the cigar wrapper, and the cigar wrapper is then wrapped around a quantity of marihuana and smoked.

After the operator wrote down his information, Sergeant Pappas focused his attention on the defendant, and noticed a large bulge in the defendant's right front pants' pocket. Sergeant Pappas asked the defendant to write down his name and date of birth. The defendant replied, in substance, that he did not have to that. Sergeant Pappas replied, "I realize that," and asked again that the defendant to write his name and date of birth and stated that he usually identified everyone in a vehicle. Sergeant Pappas then asked if anyone was on probation, and both defendants stated no.

Sergeant Pappas indicated to the operator and the defendant, that someone was smoking "weed," meaning marijuana, in the car. The defendant denied, in substance, that he had been smoking marihuana, but indicated that maybe someone else had been smoking marijuana. Sergeant Pappas stated that he needed the defendant's name for that, and that he wasn't trying to give them a hard time, but that they couldn't smoke "weed" in the car. The defendant wrote down his name and date of birth, and Sergeant Pappas asked the defendant what the bulge in his pocket was, and "can you pull it out real quick." The defendant said "yeah" than removed from his pocket a large quantity of cash, which was disorganized and in multiple denominations, and which Sergeant Pappas estimated to be several thousand dollars. Sergeant Pappas further asked whether there was anything else in the defendant's pocket, whether the defendant had any "ID." Sergeant Pappas also asked "just the two phones," referring to a phone the defendant had removed from his pocket, and one the defendant had on his lap. The defendant than stated in substance that one of the phones was just for music.

Sergeant Pappas asked the defendant to step out of the vehicle, and once the defendant stepped out, Sergeant Pappas asked whether defendant had anything else in his pockets and asked him to remove the contents of his pockets. The defendant volunteered that Sergeant

3

Pappas could search him, however, Sergeant Pappas elected not to do so at that time. The defendant removed the large amount of money from his pants' pocket, and Sergeant Pappas observed a Maine Identification card mixed in with the money. The defendant, stated, in substance that he didn't know he had the ID. Sergeant Pappas asked that amount of the money and the defendant indicated it was $1,500. In response to Sergeant' Pappas' questions, the defendant also indicated that he was not on probation, but that he was on bail for trespass and violating conditions of release.

Sergeant Pappas asked the defendant to stand at the front of Sergeant Pappas' police vehicle, and the defendant complied. Sergeant Pappas then entered his own vehicle, and began to run computer checks on the Dodge Avenger, the operator, and the defendant. Through these computer checks, Sergeant Pappas learned that the operator's privilege to drive a motor vehicle was suspended. In addition, Sergeant Pappas learned that the defendant was a felon, and was out on bail with conditions that he not use illegal drugs or marijuana. The bail conditions further authorized searches and tests of the defendant for illegal drugs and testing for illegal drugs and marijuana without articulable suspicion or probable cause.

After performing the computer checks, Sergeant Pappas exited his vehicle, informed the defendant that he was on bail conditions and was being detained, and handcuffed the defendant. Sergeant Pappas asked whether the defendant had anything on him, then searched the defendant and felt a hard object near the defendant's groin.[4] Based on his training and experience, Sergeant Pappas suspected that the object was a bag containing cocaine base, which is commonly known as crack cocaine. Sergeant Pappas began to remove the object by manipulating the object from the outside of the defendant's pants, and at the same time, the defendant

---

[4] The time stamp from the dashboard surveillance camera footage indicates that Sergeant Pappas located the hard objects in the defendant's pants at approximately 11:44 p.m.

attempted to pull away and grab the object at his groin. Eventually, Sergeant Pappas removed the object from the defendant's pants, and observed it to be a plastic bag containing crack cocaine. Immediately after Sergeant Pappas recovered the crack cocaine, the defendant ran across approximately six lanes of traffic to a wooded area next to a nearby hotel. Sergeant Pappas and a Scarborough Police Officer, who arrived just as the defendant fled, located the defendant in the wooded area and placed him under arrest.

After the defendant was arrested, Sergeant Pappas recovered three cellular telephones from a patron of the hotel, which the operator had attempted to hide in a vehicle in the hotel parking lot. In addition, Sergeant Pappas searched the Dodge Avenger, and observed a cup in the center console containing a small amount of water and a partially smoked marijuana "blunt." At the State Police Barracks, the defendant stated to Sergeant Pappas, in substance, that he was going to be deported and was in the United States Illegally.

## APPLICABLE MAINE TRAFFIC LAWS

Title 29a M.R.S.A. § 2057(1)(C) states that, "a red light, if steady and circular, means: (1) The operator must stop and remain stationary until an indication to proceed is shown; or (2) The operator may cautiously enter the intersection to make a right turn after stopping if: (a) Not prohibited by an appropriate sign such as "NO RIGHT TURN ON RED".

Title 29a M.R.S.A. § 1909 states that, "a vehicle must have a white light capable of illuminating the rear registration plate so that the characters on the plate are visible for a distance of at least 50 feet."

Title 28-B M.R.S.A. § 1501(2)(B)(1),(C) states that , "a person 21 years of age or older may not consume marijuana or marijuana products: If that person is the operator of a vehicle on

5

a public way or a passenger in the vehicle." "A person who violates this subsection commits a civil violation…"

Title 15 M.R.S.A. § 1092(1)(A) states that, "a defendant who has been granted preconviction or postconviction bail and who, in fact, violates a condition of release is guilty of a Class E crime."

## ARGUMENT

*I.    Sergeant Pappas Had Probable Cause to Stop the Vehicle*

A traffic stop involves a detention of the vehicle and its occupants and thus constitutes a seizure within the meaning of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). "An automobile stop is thus subject to the constitutional imperative that it not be "unreasonable" under the circumstances. As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 809-10 (1996).

There is no dispute as to Sergeant Pappas' stated basis for stopping the vehicle – violations of Title 29a M.R.S.A. § 2057(1)(C) and Title 29a M.R.S.A. § 1909.  The only dispute presented to the Court is whether the Sergeant Pappas' observations provided probable cause that the traffic violations occurred. In short, Sergeant Pappas observed the vehicle make a right turn through a traffic light without stopping, and observed that the vehicle's plate lights were out. The movement of light on the pavement from the vehicle's headlights as it approached and went through the red light corroborates Sergeant Pappas' observations.  In addition, the operator admitted the validity of the stop when he apologized to Sergeant Pappas, stating "my bad, I did that turn real quick, my bad, because I was lost."  Both the traffic violation and the equipment

violation provided probable cause to stop the vehicle, and the stop was reasonable under the circumstances.

In addition, where there is probable cause to believe that a traffic violation has occurred, an officer's subjective motives for making a traffic stop are irrelevant. *See Whren v. United States*, 517 U.S. 813. Accordingly, it is irrelevant whether the stop was "pretext," as alleged by the defendant.

> II.     *Sergeant Pappas' Lawful Inquiries did not Measurably Extend the Stop*

Upon stopping a driver for committing a traffic violation, police officers may conduct "ordinary inquiries incident to the traffic stop." *United States v. Clark,* 879 F.3d 1, (1st Circ. 2018) *citing* Rodriguez v. United States, ––– U.S. ––––, 135 S.Ct. 1609, 1614, 191 L.Ed.2d 492 (2015). These ordinary inquiries include "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* Further, "due to the inherent dangers of a traffic stop, the police may request identification from passengers in the vehicle, so long as those requests do not measurably extend the duration of the stop." *Id. citing United States v. Chaney*, 584 F.3d 20, 26 (1st Cir. 2009)0 (*internal quotations omitted).*

In this case, Sergeant Pappas stopped and approached the vehicle, and immediately engaged in "ordinary inquiries" incident to a traffic stop, such as asking the operator inquiring as to the operator's identity, vehicle insurance, and registration. In addition, Sergeant Pappas asked the defendant whether he had identification, and asked the defendant to write down his name and date of birth. These inquiries into the defendant's identity were a reasonable safety precaution. *See Id.* Likewise, Sergeant Pappas' requests that the defendant show him the contents of his pocket, were a reasonable safety precaution, based on the possibility that the bulge was a

weapon. The defendant's voluntary actions in showing Sergeant Pappas the contents of his pockets cannot be construed as an impermissible search. *See United States v. Brake*, 666 F.3d 800 (1st Circ. 2011).

Further, the overall length of the encounter in this case was relatively brief. In *Rodriguez*, approximately 27 minutes elapsed from the commencement of the stop until the commencement of a canine sniff, leading the Court to find that the officers had extended their stop beyond its original purpose without reasonable suspicion of criminal activity. *Rodriguez v. United States*, ––– U.S. ––––, 135 S.Ct. 1609, 1614, 191 L.Ed.2d 492 (2015). Here, a period of approximately 11 minutes passed from the time at which the Dodge Avenger pulled over and stopped, to the time at which Sergeant Pappas felt what he believed to be a bag of cocaine base in the defendant's pants. Accordingly, Sergeant Pappas' inquiries into the defendant did not impermissibly extend the stop.

   III. *Sergeant Pappas Lawfully Requested the Defendant to Exit the Vehicle*

Defendant incorrectly argues that Sergeant Pappas illegally commanded defendant to exit the vehicle without particularized suspicion that the defendant was armed or that criminal activity was occurring. However, no such particularized suspicion is required for police to command both drivers and passengers to exit a vehicle for the duration of a lawful stop. *See Pennsylvania v. Mimms,* 434 U.S. 106, 111 (1977). Thus, Sergeant Pappas was justified in requesting that the defendant exit the vehicle, even *without* reasonable suspicion to believe the defendant was committing a crime or carrying a weapon. However, as set forth in greater detail below, Sergeant Pappas did in fact have reasonable suspicion of criminal activity at the time he requested the defendant exit the vehicle.

### IV. *Even if Inquiries into the Defendant's Identity Extended the Stop, any Delay Was Justified based on the Circumstances*

Based on events that unfolded during the stop, Sergeant Pappas's suspicions of criminal activity escalated through the duration of the encounter. This shift in focus from the initial traffic violation, to suspicion that the defendant and/or the operator were engaged in criminal activity was neither unusual, nor impermissible. *See U.S. v. Sowers*, 136 F.3.d 24 (1st Cir. 1998). Ultimately, Sergeant Pappas' observations provided reasonable suspicion that criminal activity was occurring. Police officers are constitutionally permitted to "briefly detain an individual for questioning if the officer[s] ha[ve] 'reasonable suspicion supported by articulable facts that criminal activity may be afoot.'" *Schubert v. City of Springfield*, 589 F.3d 496, 501 (1st Cir. 2009) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (internal quotations omitted)); *see also United States v. Wright*, 582 F.3d 199, 205 (1st Cir. 2009). Reasonable suspicion sufficient to justify a *Terry* stop exists when law enforcement officials are able to point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968) "To constitute reasonable suspicion, 'the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard.'" *United States v. Campbell*, Nos. 12-1947, 12-2161, 2013 WL 6767846, at *4 (1st Cir. Dec. 23, 2013) (quoting *United States v. Arvizu*, 534 U.S. 266, 274 (2002)).

Prior to asking the defendant to step out of the vehicle, Sergeant Pappas knew that (1) that the neither defendant nor the operator were the registered owner of the vehicle, (2) both the defendant and the operator claimed not to have any identification, (3) the defendant initially refused to provide his name and date of birth, (4) there was a strong odor of marijuana coming from the vehicle, (5) there were items associated with rolling marijuana "blunts" in plain view

9

inside the vehicle, (6) the defendant was in possession of a large quantity of currency, which was disorganized and in mixed denominations, [5] and (7) the defendant possessed two cellular telephones.[6] Viewed in isolation, any one of the above indicators might not give reasonable suspicion that criminal activity was afoot. However, all of these observations combined to provide Sergeant Pappas with reasonable suspicion that criminal activity was occurring.

After the defendant exited the vehicle, Sergeant Pappas' suspicion intensified, when he learned that the defendant had a Maine Identification in his pocket. This gave Sergeant Pappas further reason to suspect that the defendant had lied to him about not having identification, and may have been attempting to conceal his identity. Accordingly, Sergeant Pappas had further reason to verify the defendant's identity, which was in any case permissible as an ordinary safety precaution. Therefore, even if Sergeant Pappas' efforts to identify the defendant resulted in a minimal delay in extending the traffic stop, the delay was justified by reasonable suspicion of criminal activity.

The length of the stop was further justified based on Sergeant Pappas's smelling of burnt marijuana and his observation of items left over from making "blunts." Sergeant Pappas had at least reasonable suspicion to investigate whether the defendant, and operator violated Title 28-B M.R.S.A. § 1501(2)(B)(1),(C), which prohibits motor vehicle operators and passengers from smoking marijuana. More importantly, these observations, by themselves, provided Sergeant Pappas with probable cause to search the vehicle, though he did not search the vehicle until after the defendant was arrested. *See United States v. Staula*, 80 F.3d 596, 602 (1st Cir. 1996).

---

[5] *See* Un*ited States v. Henry*, 827 F.3d 16, 30 (1st Cir. 2016) (including in the probable cause calculus the fact that officers found "a large sum of cash in [the defendant's] jacket pocket, which is 'indicative of sex and drug trafficking.'
[6] Based on his training and experience, Sergeant Pappas was aware the drug traffickers commonly use multiple telephones.

"[W]hen a law enforcement officer detects the odor of marijuana emanating from a confined area, such as the passenger compartment of a motor vehicle, that olfactory evidence furnishes the officer with probable cause to conduct a search of the confined area." *See also United States v. Valdes*, Docket no. 2:18-cr-00063-GZS, 2019 WL 97021 (D. Me. 2019). Though Sergeant Pappas had probable cause to search the vehicle, his continued efforts to identify the defendant prior to searching the vehicle were a reasonable safety precaution, particularly given the fact that there were no other officers on the scene, neither the defendant nor the operator had identification, and the defendant was reticent to identify himself.

       V.       *Sergeant Pappas Lawfully Searched the Defendant Pursuant to Bail Conditions*

Prior to handcuffing and searching the defendant, Sergeant Pappas learned that defendant was subject to bail conditions forbidding him from using or possessing drugs and marijuana. Sergeant Pappas was also aware that the bail conditions authorized searches of the defendant for illegal drugs, and random tests of the defendant for drugs and marijuana without probable cause or articulable suspicion. Therefore, Sergeant Pappas would have been justified in searching the defendant for drugs or marijuana, even without probable cause or reasonable suspicion. However, Sergeant Pappas had reasonable suspicion to believe that criminal activity was occurring, and had reasonable suspicion to believe that the defendant had smoked marijuana in the vehicle.

The defendant seeks to suppress crack cocaine seized from his person as the fruits of unconstitutional bail conditions. The defendant relies, in large part, on the Ninth Circuit's decision in *United States v. Scott,* 450 F.3d 863 (9th Cir. 2006), in support of his position. The *Scott* decision - over the dissent on one judge and the dissent of a denial for rehearing en banc by seven members of the Ninth Circuit - held that a Nevada state bail condition requiring random

11

searches and drug testing was unconstitutional. The defendant seeks to apply the same analysis to the state bail conditions imposed in this matter.

There are several reasons why this Court should decline to follow the *Scott* decision. First, the specific state bail conditions imposed in the defendant's state case have been expressly approved by the Maine Supreme Judicial Court. *State v. Ullring,* 741 A.2d 1065, 1072-73 (Me. 1999) ("[t]he overriding purpose of the bail system in Maine is to ensure the appearance of the defendant at trial and to do so without incarceration as long as conditions can be imposed which will fulfill that purpose and the purpose of ensuring the integrity of the judicial process. Bail conditions, such as a prohibition against possession of illegal drugs and searches for illegal drugs, help to ensure that defendants whose backgrounds and charges indicate that substance abuse is a significant problem will show up at court. It is reasonable to expect that a defendant who maintains sobriety is more likely to appear in court on the appointed dates that a defendant who is under the influence of drugs or alcohol."). Second, a drug search and testing condition imposed on a defendant, whose bail resulted from an arrest for possession of cocaine base and who had a history of drug related convictions and bail violations, is entirely reasonable under the circumstances.[7] Third, for the reasons set forth in the *Scott* dissent from denial of rehearing en banc, 450 F.3d at 889-98, the *Scott* panel decision is both wrongly decided and also creates a "dangerous, disruptive, and poorly conceived sea change foisted upon all of the states and federal districts encompassed by the Ninth Circuit ... [and] distinguishes [the Ninth Circuit's] pre-trial release procedures from every other circuit in a manner detrimental to both prosecutors and defendants alike." *Id.* at 898.

---

[7] The Court is aware of the defendant's criminal history based on documents submitted to the Court during this case.

Further, this Court has previously declined to adopt the Ninth Circuit's holding in *Scott*. *See United States v. Gates* Criminal No. 08–42–P–H., 2008 WL 5382285 (D. Me. 2008) (Rich, Mag. J.) *Adopted by United States v. Gates* 08–42–P–H., (ECF No. 134) (D. Me. 2009) "In the context of a search and seizure undertaken pursuant to bail conditions, the government meets its burden of showing consent to such a search by pointing to bail conditions permitting it." *I.d. Citing State v. Ullring*, 1999 ME 183, 26, 741 A.2d 1065, 1073. "The burden then shifts to the defendant to present evidence showing that the bail conditions were unreasonable in the circumstances." *Id*. The First Circuit affirmed the District Court's finding in *United States v. Gates*, on the grounds that the defendant had consented to a search of his residence. *United States v. Gates* 709 F.3d 58, 64 (1st Cir. 2013). The First Circuit also noted, that "[the District Court] supportably found that the search was independently justified by the extant bail conditions. After all, the defendant had agreed, as part of his bail conditions incident to the charges of disorderly conduct and resisting arrest, to submit to searches of his person and residence at any time, even in the absence of articulable suspicion. We see no reason why we should not give the plain language of such a bail condition force and effect." *Id. See also United States vs. Dennis Gauthier*, Criminal No. 10–35–P–S. 2010 WL 3488665 (D. Me. 2010)(Rich, Mag. J.) *Affirmed by United States vs. Dennis Gauthier*, Criminal No. 10–35–P–S. 2010 (ECF No. 141) (D. Me. 2010). There is no reason to extend the Ninth Circuit's holding in *Scott* to this case, particularly given that the search was not conducted randomly, but was also supported by reasonable suspicion that criminal activity was occurring.

## **CONCLUSION**

The traffic stop was based on probable cause to believe that traffic violations had occurred. Police inquiries did not measurably extend the stop, and if any extension of the stop occurred it was supported by reasonable suspicions. The search of the defendant was authorized by lawful bail conditions. As such, the resulting seizure of cocaine base, other evidence, and the defendant's arrest was entirely lawful. All statements were voluntarily, and were not obtained in violation of *Miranda*. The Government respectfully requests that the Defendant's motion be denied.

Date: March 22, 2019

>Respectfully submitted,
>
>Halsey Frank
>United States Attorney
>
>/s/Nicholas Scott
>Assistant U.S. Attorney
>United States Attorney's Office
>100 Middle Street
>Portland, ME 04101

CERTIFICATE OF SERVICE

      I hereby certify that on March 22, 2019, I filed the foregoing response using the CM/ECF system, which will cause a copy to be sent to the following counsels:

Stacey Neumann, Esq.

                                          /s/Nicholas Scott
                                          Assistant U.S. Attorney
                                          United States Attorney's Office
                                          100 Middle Street
                                          Portland, Maine 04101
                                          Nicholas.scott@usdoj.gov