UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>MEKONNEN BERHE )<br>)<br>Defendant ) | Case No.: 2:19-cr-00003-DBH |

### REPLY TO GOVERNMENT'S RESPONSE
### TO DEFENDANT'S MOTION TO SUPPRESS

Defendant, MeKonnen Berhe, by and through the undersigned counsel, respectfully files this Reply in support of his Motion to Suppress. Sergeant Pappas lacked reasonable suspicion to believe that criminal activity was afoot or that Berhe was armed, as such the searches of Berhe were unconstitutional. The initial unconstitutional search and inadequate procedure that led to the issuance of Berhe's bail conditions violated Berhe's Fourth Amendment rights and therefore cannot save the improper search. For these reasons, the Court must suppress the evidence obtained therefrom. In the alternative, Berhe requests the Court order an evidentiary hearing on his motion.

### ARGUMENT
**I.   Sergeant Pappas Lacked Reasonable Suspicion to Believe Criminal Activity Was Afoot And His Subsequent Evidence-Seeking Search Of Mr. Berhe's Person Violated Mr. Berhe's Fourth Amendment Rights.**

Not only did Pappas lack reasonable articulable suspicion to execute a *Terry* stop, his search of Berhe far exceeded the bounds of the "strictly circumscribed" search for weapons under *Terry*. *See Terry v. Ohio*, 392 U.S. 1, 26 (1968). The scope of any Fourth Amendment intrusion is limited, and must be reasonably related to the articulable suspicion that prompted the search. *Id.* at 20.

The Government's response underscores its failure to acknowledge Maine's legalization of marijuana and its implications for law enforcement. Maine has not merely decriminalized possession and transportation of marijuana, it has legalized recreational amounts marijuana. Violations of 28-B

1

M.R.S. § 1501(2)(B)(1) are expressly categorized as civil infractions, not criminal ones. *See id.* § 1501(2)(C). A person cannot be punished criminally for using, possessing or transporting up to 2.5 ounces of marijuana. *Id.* § 1501(1)(B). Furthermore, it is now legal in Maine to use, possess or transport marijuana paraphernalia. *Id.* § 1501(1)(A). In its response, the Government relies on a number of cases decided before Maine legalized marijuana. Maine is now in an entirely different legal landscape, one that creates far more ambiguity regarding what further types of inquiry—if any—activity related to marijuana can trigger at the local level. The Government's suggestion that the mere smell of marijuana – without even visible evidence thereof – and the observation of cigarette rolling papers is probative of <u>criminal</u> conduct is inapt after these apposite changes in legislation. In this case, Maine's legalization of marijuana must be considered in the context of the circumstances surrounding the vehicle stop and any ambiguity must be resolved in favor of suppressing the evidence resulting from the illegal search of Mr. Berhe's person.

Even if Pappas allegedly smelled "the strong odor of burnt marijuana" coming from the car, *Opp'n* at 2, Pappas did not see the driver or Berhe actually smoking marijuana and did not report seeing smoke in the air of the passenger compartment. These unremarkable circumstances that Pappas allegedly observed coupled with the mere smell of marijuana in a vehicle is meaningless under Maine law with respect to suspicion of criminal activity. "To sanction a finding that the Fourth Amendment permits a seizure based on [] a weak foundation would be tantamount to subjecting the traveling public to virtually random seizures, inquisitions to obtain information which could then be used to suggest reasonable suspicion, and arbitrary exercises of police power." *United States v. Wood*, 106 F.3d 942, 946-948 (10th Cir. 1997) (driver's failure to consent to search, "unusual travel plans" in a rented car, inaccurate recall of where he rented the car, nervousness and prior narcotics convictions insufficient to form the basis for reasonable suspicion). The Government states that Pappas "had reasonable suspicion to believe that the defendant had smoked marijuana in

2

the vehicle." *Opp'n* at 11. Simply smoking marijuana in a vehicle is not a crime in Maine if that vehicle was parked on private property when the marijuana was smoked. *See* 28-B M.R.S. § 1501(2)(A). Smelling marijuana smoke in a car is not reasonable suspicion to believe a crime is currently being committed. In Maine, allowing the mere smell of marijuana smoke to give rise to reasonable suspicion of criminal activity is tantamount to eliminating the requirement for reasonable suspicion altogether and allowing for random searches of private citizens.

The Government asserts that a number of circumstances generated the reasonable suspicion sufficient to justify Pappas's search of Berhe, ranging from, *inter alia*, the lack of identification on either occupant, to the two cellphones in Berhe's possession. *Opp'n* at 9-10. However, these fail to rise to the standard of "reasonable suspicion of ongoing criminal activity" when considered in the context of all circumstances present at the time of the stop.[1] To the extent that high crime areas are relevant to contextual consideration in *Terry*, *see United States v. Soares*, 521 F.3d 117, 121 (1st Cir. 2008) it is also relevant that the area where Pappas executed the stop is not high-crime. Neither the driver nor Berhe exhibited nervous or inappropriate behavior, *see United States v. Awer*, 770 F.3d 83, 91 (1st Cir. 2014) ("Nervousness and furtive movements in questionable surroundings" relevant to *Terry* frisk assessment). Berhe wore no baggy clothing that could have concealed a weapon. *People v. Fews*, 27 Cal. App. 5th 553, 2018 WL 4560914 (Cal. App. 2018).

The Government asserts there was nothing untoward about Pappas's inquiry into Berhe's identity, *Opp'n* at 7, and argues Berhe's unwillingness to provide his name and date of birth was a contributing factor in Pappas's reasonable suspicion that criminal activity was occurring, *Opp'n* at 10. However, the recording of the stop demonstrates that Berhe's "unwillingness" was actually an

---

[1] The Government recites a number of facts that deal with events that occurred after the safety-related search of the bulge in Berhe's pocket in an attempt to bolster its argument on reasonable suspicion. *See, e.g., Opp'n* at 4-5, 10. These are not relevant to the Court's "reasonable suspicion" analysis, which is limited only to those facts the officer knew at the time of the search. *See Florida v. J.L.,* 529 U.S. 266, 271 (2000).

3

attempt to assert his rights. When Pappas asked for his identification, Berhe responded, "I don't have to do that" and Pappas replied, "Yeah, I realize that." Berhe identified himself immediately thereafter. To hold that a citizen's reasonable assertion of his rights constitutes reasonable suspicion would lead to the very police state those constitutional rights are meant to prevent, and presents the public with an impossible choice: either succumb to a police officer's demand, or have that hesitation to do so justify the demand. Pappas observed one phone on the center console when he initially looked into the passenger compartment, and discovered another that comprised part of the "bulge" in Berhe's pocket. Pappas made no follow-up inquiry regarding Berhe's explanation. Possessing an additional cell phone for music is of little to no probative value in today's landscape where it is common for people to carry two cell phones for work, music, or other practical purposes.

The Government premises the permissibility of the subsequent search outside the vehicle on an inaccurate contention that Berhe voluntarily showed Pappas the contents of his pockets. *See Opp'n* at 8. The video of the stop demonstrates that although Berhe was cooperative with Pappas, he certainly did not voluntarily offer the contents of his pockets for Pappas's examination. His action was the type of "mere acquiescence in the face of an unfounded claim of present lawful authority," *United States v. Perez-Montanez*, 202 F.3d 434, 438 (1st Cir. 2000), that violates the Fourth Amendment. By the time Pappas searched Berhe's pockets a second time, Pappas had instructed Berhe not to give him a hard time, stated he was simply doing his job (*i.e.*, Berhe was required to follow Pappas's orders), and ordered Berhe out of the car. Even if Pappas was justified in asking Berhe to empty one pocket to verify the bulge was not a weapon when he first approached the car, he was not justified in demanding that Berhe step out of the car for additional searches once the safety search revealed Berhe was unarmed.

Next, the Government asserts that Officer Pappas's request to see the contents of Mr. Berhe's pocket was a reasonable safety precaution "based on the possibility that the bulge was a

4

weapon." *Opp'n* at 7-8. Even accepting that traffic stops are "especially fraught with danger to police officers," *Rodriguez v. United States*, 135 S. Ct. 1609, 1616 (2015), the application of this rationale to the instant case strains credulity. Pappas's report does not indicate that he observed anything in the car that suggested that the driver or Mr. Berhe were armed or dangerous. Furthermore, it is long past time to decouple any association of marijuana activity with gun possession in Maine. The facts demonstrate that Officer Pappas allegedly smelled marijuana and then engaged in a purely evidentiary search of Berhe—something expressly prohibited in a *Terry* stop. *See Terry v. Ohio*, 392 U.S. 1, 30-31 (1968) (permitting an officer to conduct a "limited search of outer clothing" to "discover weapons" when the officer has reasonable grounds to believe criminal activity may be afoot <u>and</u> that "the persons with whom he is dealing may be armed and presently dangerous.").

Pappas's command that Berhe get out of the car was illegal because the search was based on a lack of reasonable suspicion that Berhe was armed and dangerous. The Government points to one Supreme Court case, *Pennsylvania v. Mimms*, 434 U.S. 106 (1977), for the proposition that police need no particularized suspicion that a vehicle occupant is armed or that criminal activity is occurring to order the person out of the car. *Opp'n* at 8. However, *Mimms* does not carry the weight to which the Government assigns it. First, *Mimms* deals only with the legality of asking a driver to exit a vehicle. *See Mimms*, 434 U.S. 106 at 111. Second, in that case there was a "large bulge" under the driver's sports jacket, *id.* at 107, that "permitted the officer to conclude that [the driver] was armed and thus posed a serious and present danger to the safety of the officer," *id.* at 112. Here, Pappas's suspicion that Berhe was armed and presently dangerous was dispelled when Pappas saw that the bulge was not caused by a weapon; Pappas exceeded the reasonable scope of the search by telling Berhe to get out of the car and empty his pockets.

**II.     The Bail Conditions Imposed On Berhe Are Unconstitutional.**

5

The Government attacks the relevance of the Ninth Circuit's decision in *United States v. Scott*, 450 F.3d 863 (9th Cir. 2006), on grounds that the Maine Supreme Judicial Court has "expressly approved" the "specific state bail conditions imposed in the defendant's state case" in *State v. Ullring*, 741 A.2d 1065 (Me. 1999), and because federal courts in Maine and the First Circuit have declined to adopt the *Scott* holding. *Opp'n* at 12-13. These arguments fail to consider the development of Fourth Amendment jurisprudence subsequent to the Law Court's decision in *Ullring*, misstate both the relevance and significance of that decision to subsequent decisions by federal courts in Maine and the First Circuit, and ignore the specific facts of how Berhe's conditions were imposed in this matter *pro forma* by a bail commissioner.

In *Ullring,* the Law Court specifically left open the possibility that bail conditions may be unreasonable in individual cases, *Ullring* at 1073. Since the *Ullring* decision 20 years ago, the Supreme Court has substantially fleshed out the Fourth Amendment protections afforded to arrestees. *See Mot. to Suppress* at 14-16. In *Ullring*, the Law Court explained that the bail system in Maine is designed to ensure the appearance of the defendant at trial. *Ullring*, 741 A.2d at 1072. However, the Supreme Court has since explored this exact justification and explained that attendance is not a per se justification for the legitimacy of any particular bail conditions, and that a balancing test must be applied. *See King*, 133 S. Ct. at 1977-78 ("The government interest [in ensuring availability for trial] must outweigh the degree to which the search invades an individual's legitimate expectation of privacy."). In this case, a bail commissioner—not a judicial officer—imposed these unconstitutional bail conditions without any evidentiary hearing or even a record of his analysis.

Contrary to the Government's assertion, federal courts have not expressly declined to follow *Scott*, the case Defendant cited in his Motion. *Cf. Opp'n* at 13. *United States v. Gates*, Criminal No. 08-42-P-H, 2008 WL 5382285 (D. Me. Dec. 19, 2008), does not even mention the *Scott* decision, let alone analyze the constitutionality of the defendant's bail conditions in that case. The First Circuit's

6

decision in the *Gates* appeal relies on cases that involved parolees, not mere arrestees free on bail conditions, a significant distinction. *See U.S. v. Gates*, 709 F.3d 58, 64 (1st Cir. 2013) (citing *Samson v. California*, 547 U.S. 843, 852–57, (2006); *United States v. Barner*, 666 F.3d 79, 81, 84–86 (2d Cir. 2012)). Apparently, the distinction between parolees and arrestees, an issue upon which the *Scott* decision is instructive, was not brought to the attention of the First Circuit. Thus, the First Circuit did not decide the issue that is presently before the Court.

Under the evolving concern for arrestee's Fourth Amendment rights and the *Ullring* court's allowance for a finding of constitutional violations in individual cases, the Court should determine that Berhe's bail conditions, imposed by a bail commissioner without any hearing, were unconstitutional, as was application of those bail conditions to the search of his person where he was an unarmed passenger in a car where the driver was pulled over for turning too quickly at a red light. Accordingly, the Court should find that the search was illegal and the evidence obtained therefrom should be suppressed.

## CONCLUSION

For these reasons, the Court must suppress the evidence obtained after the illegal search of Mr. Berhe. In the alternative, the Court should order an evidentiary hearing on Defendant's Motion to Suppress.

Dated: April 17, 2019    /s/ Stacey D. Neumann
Stacey D. Neumann, Esq.
sneumann@mpmlaw.com
MURRAY PLUMB & MURRAY
75 Pearl Street, P.O. Box 9785
Portland, ME  04104-5085
(207)773-5651
(207) 773-8023 (Fax)
*Attorney for MeKonnen Berhe*

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed this *Reply to Government's Response to Defendant's Motion to Suppress* with the Clerk of Court using the CM/ECF System, which will send notice of such filing to all parties of record. This document is available for viewing and downloading from the CM/ECF System.


Dated: April 17, 2019          /s/ Stacey D. Neumann

                                            Stacey D. Neumann, Esq.
                                            sneumann@mpmlaw.com
                                            MURRAY PLUMB & MURRAY
                                            75 Pearl Street, P.O. Box 9785
                                            Portland, ME  04104-5085
                                            (207)773-5651
                                            (207) 773-8023 (Fax)